IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | |
|---|---|
| Warsaw Sugar Beet Association LP I, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2:09-cv-4 |
| vs. | ) |
| | ) |
| Federal Crop Insurance Corporation, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Warsaw Sugar Beet Association LP I ("Warsaw"), initiated this action under 7 U.S.C. § 6999 seeking judicial review of the final determination of the National Appeals Division ("NAD"), the United States Department of Agriculture, finding the Federal Crop Insurance Corporation's ("FCIC") decision denying Warsaw's claim for sugar beet production losses under its multi-peril crop insurance policy was not erroneous. Both parties have moved for summary judgment. (Doc. #11, Doc. #16).

**Summary of Recommendation**

The magistrate judge **RECOMMENDS** the decision of the NAD be **AFFIRMED** in part and **REVERSED** in part. The majority of the decision of the NAD is supported by substantial evidence in the record as a whole, and is not arbitrary, capricious, an abuse of discretion, or contrary to existing law. However, the determination that Warsaw misreported information is not supported by substantial evidence in the record as a whole.

**Background**

Warsaw is operated by John Gudajtes and his three sons Andrew, Lee and James (collectively "Gudajteses").[1]  Warsaw grew sugar beets in 2006 on contract with American Crystal Sugar Company in Grand Forks County, Pembina County, and Walsh County.  The sugar beets were insured under a multi-peril crop insurance policy issued by Rain and Hail, LLC, ("Rain and Hail") and reinsured by the FCIC.  Warsaw's insured acreage consisted solely of headlands and field openings divided into 26 units.[2]  The main parts of the fields were farmed by one or more of Warsaw's partners through other entities, or as individuals.

Warsaw filed a claim for sugar beet production losses caused by drought in 2006 on 25 of its 26 units.  Rain and Hail notified the FCIC of the large claim, and the FCIC elected to participate in the loss adjustment process.  The Risk Management Agency ("RMA"),[3] on behalf of the FCIC, denied Warsaw's claim for production losses.  (AR 91-96).[4]  Warsaw filed an

---

[1]  In addition to producing sugar beets for Warsaw, the Gudajtes family produced sugar beets individually and for several other entities as well in 2006.  (Aug. HT 82; AR 347, 1085-1086).

[2]  "Headlands is the term that the industry uses to describe the ends of the field where the farm equipment turns around while cultivating or caring for the crop in that field."  (AR 92). Headlands are perpendicular to the main field rows.  (Aug. HT 92).  Field openings are where the grower makes the first passes through the fields.  Openings are parallel to the crop rows. (Aug. HT 92).

[3]  RMA manages and operates the FCIC.

[4]  AR refers to the administrative record filed on CD with the court.  The hearings before the NAD Hearing Officer were also filed on CD with the court.  Warsaw's counsel filed written transcripts of the August 30, 2007, NAD hearing, and of the November 20, 2007, NAD hearing. The transcripts are not the official record of testimony from the NAD hearings; however, the FCIC does not object to the court using the written transcripts.  United States' Memorandum of Law in Support of Motion for Summary Judgment at 24.  Therefore, the court will cite to the August 20, 2007, NAD hearing transcript as Aug. HT, and will refer to the November 20, 2007, NAD hearing transcript as Nov. HT.

appeal with the NAD.  The NAD Hearing Officer conducted two in-person hearings, and then issued his determination that the RMA decision was not erroneous, finding that different production methods were used by Warsaw to produce its 2006 sugar beet crop, and that the change in production methods should have been reported by the acreage reporting date.  (AR 60-66).  The Hearing Officer could not determine whether there had been a production loss caused by drought before the RMA adjusts the yield guarantee based on the production methods actually used by Warsaw in 2006, and before the RMA considers its corrective action for Warsaw's failure to report changes in its production methods.  (AR 66).  The decision of the Hearing Officer is considered the final determination of the Department of Agriculture.  (AR 66).

## Legal Standard

Review of the NAD determination is controlled by the Administrative Procedure Act ("APA").  7 U.S.C. § 6999.  Under the APA, an agency decision will be set aside if it is "unsupported by substantial evidence," or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2).

Under the arbitrary and capricious standard, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one."  Erickson Transport Corp. v. I.C.C., 728 F.2d 1057, 1062 (8th Cir. 1984) (quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86 (1974)).  The Hearing Officer must articulate a "rational connection between the facts found and the choice made."  Id.  "As long as the agency provides a rational explanation for its decision, a reviewing court will not disturb it."  Anderson v. Farm Serv.

Agency of U.S. Dept. of Agric., 534 F.3d 811, 814 (8th Cir. 2008) (citation omitted).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Erickson Transport Corp., 728 F.2d at 1062 (citations omitted). Under the substantial evidence test, the court must consider the record as a whole and must take into account evidence that fairly detracts from the NAD determination. Id. at 1063. "The possibility of drawing two inconsistent conclusions from the evidence does not mean the agency's findings are unsupported by substantial evidence." Id.

## Discussion

I.   Different Production Methods

Warsaw contends the Hearing Officer erroneously concluded that different production methods were used for establishing the Master Yield than Warsaw used to produce its 2006 sugar beet crop,[5] and that Warsaw failed to report changes in its production methods as required by the multi-peril crop insurance policy. The Hearing Officer determined that turning equipment on the headlands and harvesting the entire insured sugar beet crop early, as Warsaw did, are reportable changes in production methods that are likely to result in a lower yield. (AR 65). The terms and conditions of multi-peril crop insurance policies are published in the Code of Federal Regulations. See 7 C.F.R. § 457.8. The Common Crop Insurance Regulations provide:

> [Y]our approved yield will be adjusted . . . To an amount consistent with the production methods actually carried out for the crop year if you use a different

---

[5] A Master Yield is the average of the actual yield history for all of a producer's sugar beets grown in a county. (Aug. HT 55, AR 62). Four years of actual production history are required to establish a Master Yield. (Aug. HT 54, AR 422). A Master Yield or approved yield is used to establish a yield guarantee or level of coverage for insurance purposes. 7 C.F.R. § 457.8 Subsection 1.

>production method than was previously used and the production method actually
carried out is likely to result in a yield lower than the average of your previous
actual yields. The yield will be adjusted based on your other units where such
production methods were carried out or to the applicable county transitional yield
for the production methods if other such units do not exist. You must notify us of
changes in your production methods by the acreage reporting date. If you fail to
notify us, in addition to the reduction of your approved yield described herein,
you will be considered to have misreported information and you will be subject to
the consequences in section 6(g). For example, for a non-irrigated unit, your yield
is based upon acreage of the crop that is watered once prior to planting, and the
crop is not watered prior to planting for the current crop year. Your approved
APH yield will be reduced to an amount consistent with the actual production
history of your other non-irrigated units where the crop has not been watered
prior to planting or limited to the non-irrigated transitional yield for the unit if
other such units do not exist.

7 C.F.R. § 457.8 Subsection 3(g)(3). Warsaw's Master Yield was based on whole fields which included headlands and openings, and it was based on partial early harvest for pre-pile purposes,[6] with the remaining sugar beets harvested later. (Aug. HT 195-96). Warsaw's 2006 insured acres consisted solely of headlands and openings, and all of its sugar beets were harvested early for pre-pile purposes.

    A.    <u>The Term "Production Method"</u>

Warsaw contends the term "production method" is ambiguous, and therefore the term should be construed in its favor. Where contract meaning is uncertain, "the ambiguities and doubts must be resolved against the party who prepared the contract." <u>A.W.G. Farms, Inc. v. Fed. Crop Ins. Corp.</u>, 757 F.2d 720, 726 (8th Cir. 1985). The court finds the term "production method," while broad, is not ambiguous. Production methods can encompass many factors, and

---

[6] American Crystal Sugar Company requires growers to harvest or "pre-pile" a certain portion of their sugar beets early to ensure it can process all of the stockpiled beets before they spoil. (AR 378-80).

the Hearing Officer's interpretation of the term is reasonable. "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984). "We must give substantial deference to an agency's interpretation of its own regulations." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (citations omitted).

      B.      Turning Equipment on the Headlands

Substantial evidence in the record as a whole supports the Hearing Officer's determination that turning equipment on the insured acreage reduces yield. Dr. Alan Dexter, a sugar beet specialist employed by North Dakota State University, explained that yield is lost on headlands due to turning around with machinery. (AR 388). John Gudajtes agreed with Dr. Dexter's assessment. (Aug. HT 111). Other evidence in the record indicates that Warsaw used agricultural practices to minimize yield loss on the headlands, and that sugar beets are resilient, resulting in minimal yield loss due to driving on the beets. (Aug. HT 93-97, 123-24). However, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent the [Hearing Officer's] finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Warsaw's insured acreage consisted solely of headlands and openings. Therefore, the percentage of Warsaw's insured acreage on which the operator turned was greater than on the acreage used to determine Warsaw's Master Yield. The Hearing Officer found that "[w]hen headlands and field openings comprise the entire unit, the yield history is almost certain to be distorted from the history used for the Master Yield." (AR 65). The Hearing Officer acknowledged that some headland damage was included in the Master Yield, but since Warsaw's

units consisted solely of headlands and openings there was a greater concentration of wheel track damage, which "made this additional turning a reportable change in production method." (AR 65). The Hearing Officer's determination is rationally based on relevant factors, and is not arbitrary, capricious, an abuse of discretion, or contrary to existing law.

### C. Early Harvest of the Sugar Beet Crop

Warsaw harvested all of its sugar beets early during pre-pile. Its Master Yield was based primarily on later harvested beets from the main portions of the fields. The Hearing Officer acknowledged that some early harvest beets were included in the Master Yield, but "it is the early harvesting of 100 percent of the crop insured by [Warsaw] that distorts the production method used for the Master Yield." (AR 65). The Hearing Officer determined early harvest is a production method likely to result in a lower yield, and that early harvest of all of Warsaw's insured beets is a reportable change in production methods. (AR 65).

John and Lee Gudajtes testified that early harvest produces less yield. (Aug. HT 115, 192). However, Warsaw contends it was not its choice as to when to harvest its sugar beets. The court recognizes American Crystal Sugar Company requires growers to harvest early a certain amount of their sugar beets for pre-pile. (AR 378). Lee Gudajtes testified that American Crystal Sugar Company considers all of the partners' entities as one for pre-pile purposes. Therefore, their quota for early harvest was based on all of the Gudajtes entities and not just on Warsaw. In order to meet that quota, the Gudajtes family harvested all of Warsaw's sugar beets early. The evidence shows it is good management practice to harvest a field's headlands and openings first. (Aug. HT 90). However, the crop insurer does not view all of the Gudajtes entities as one for insurance purposes. Warsaw is viewed separately, and Warsaw harvested all of its beets early,

which the Hearing Officer rationally determined is a reportable change in production methods likely to result in a lower yield. The Hearing Officer's finding is supported by substantial evidence, is based on relevant factors, and is not arbitrary, capricious, an abuse of discretion, or contrary to existing law.

II.     Misreported Information

The Hearing Officer found that Warsaw "should have reported the changes in production method before the acreage reporting date," and that "RMA may determine that [Warsaw] misreported information and is subject to the consequences in Subsection 6(g) of the regulation." (AR 66). The Hearing Officer's determination that Warsaw failed to report its changes in production methods is not supported by substantial evidence. Rain and Hail's agent, Renae Fayette, a sugar beet insurance specialist (Aug. HT 46), knew that Warsaw's units consisted solely of headlands and openings (Aug. HT 52-53). Renae Fayette stated it was acceptable under the policy to insure headlands and openings separately, and she conveyed this information to Warsaw. (Aug. HT 49-50, 52-53, 79, 81, 115, Nov. HT 22, 26-27). Therefore, she knew that some of the sugar beets on the insured acreage would be subjected to extra traffic, and she also knew that the headlands and openings would be harvested early for pre-pile purposes, or at least harvested earlier than the main fields. See generally (Nov. HT 29) (Renae Fayette testimony discussing the advantages of insuring the headlands separately, including opening up fields early for harvest). The court finds that by keeping Rain and Hail's agent advised of its farming practices, Warsaw did not misreport information and should not be subject to the consequences in Subsection 6(g) of the regulation.

III.     Yield Adjustments

The Hearing Officer determined that RMA must adjust the Master Yield to a level consistent with the production methods actually carried out by Warsaw. (AR 66). The Common Crop Insurance Regulations provide:

> [Y]our approved yield will be adjusted . . . To an amount consistent with the production methods actually carried out for the crop year if you use a different production method than was previously used and the production method actually carried out is likely to result in a yield lower than the average of your previous actual yields. The yield **will** be adjusted based on your other units where such production methods were carried out or to the applicable county transitional yield for the production methods if other such units do not exist.

7 C.F.R. § 457.8 Subsection 3(g)(3) (emphasis added). The Hearing Officer found that since RMA had not adjusted the Master Yield, he could not determine if there was actually a production loss due to drought. Warsaw argues that RMA has violated the principles of good faith and fairness by not adjusting the Master Yield. The court finds no such violation. If Warsaw had prevailed in this case, adjustment to the Master Yield would not be necessary. Waiting to see if an adjustment in the Master Yield is necessary does not violate the principles of good faith and fairness. The FCIC stated in its brief that if it prevails, "[Warsaw] may still request that FCIC adjust the 26-ton master yield to a yield consistent with [Warsaw's] production practices." United States' Memorandum of Law in Support of Motion for Summary Judgment at 36. The court recognizes FCIC may face a challenging task in adjusting the Master Yield, but there may exist some historical yield records which will make the adjustment less difficult, considering the Gudajteses testified that they, as well as other operators, have insured their headlands and openings separately in the past, and have been paid for claims on headlands.

9

IV.     Insuring Headlands and Openings Separate from the Main Fields

Warsaw contends substantial evidence does not support the Hearing Officer's determination that it is an uncommon practice to insure sugar beet headlands and field openings separately from the main field.  Warsaw may be correct that it is a common insurance practice amongst large growers (Aug. HT 50, 74, 101, Nov. HT 16, 21-25, 34-35), but whether or not it is common has no bearing on the outcome of this case.

**Conclusion**

The NAD Hearing Officer's determination that different production methods were used to establish the Master Yield than were used to produce Warsaw's 2006 sugar beet crop is supported by substantial evidence, and is not arbitrary, capricious, an abuse of discretion, or contrary to existing law**.**  The term "production method," although broad, is not ambiguous.  The Hearing Officer's determinations that turning equipment on the headlands, and harvesting the entire insured sugar beet crop early are reportable changes in production methods that are likely to result in a lower yield, are reasonable and are supported by substantial evidence in the record as whole.  "[The court] do[es] not substitute [its] judgement for that of the agency, even if the evidence would have supported the opposite conclusion."  Miller v. U.S. Dept. of Agric., 247 Fed.Appx. 841 (8th Cir. 2007) (citation omitted).  "If the agency's determination is supportable on any rational basis, [the court] must uphold it."  Id.

The NAD Hearing Officer's determination that Warsaw did not report the changes in its production methods is not supported by substantial evidence and is arbitrary, capricious, an abuse of discretion, or otherwise contrary to existing law because Warsaw did report its farming practices to its insurance agent.  RMA did not violate the principles of good faith and fairness by waiting to adjust the Master Yield until the outcome of this case.

10

Accordingly, **IT IS RECOMMENDED** that the Hearing Officer's appeal determination be **AFFIRMED** in part and **REVERSED** in part, and that the Motions for Summary Judgment filed by Warsaw Sugar Beet Association LP I (Doc. # 11) and the Federal Crop Insurance Corporation (Doc. #16) be **GRANTED** in part and **DENIED** in part.  The case should be remanded for a determination as to whether Warsaw sustained a production loss due to drought on its 2006 sugar beet crops, after the FCIC adjusts Warsaw's Mater Yield.

### Notice of Right to Object

Pursuant to Local Rule 72.1 (D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy.

Dated this 26th day of January, 2010.

 /s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge